JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CHARLOTTE MUHA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendant. | Case No.: SACV 22-00077-CJC (DFMx)<br><br><br>**ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFF'S MOTION TO REMAND [Dkt. 13] AND REMANDING TO ORANGE COUNTY SUPERIOR COURT** |

## I. INTRODUCTION AND BACKGROUND

On November 24, 2021, Plaintiff Charlotte Muha filed this putative class action against Defendant Experian Information Solutions, Inc. in Orange County Superior Court, alleging a violation of the Fair Credit Reporting Act ("FCRA"). (Dkt. 1-1 at 4-15

[Complaint, hereafter "Compl."].) Plaintiff's FCRA claim is straightforward: she submitted a request to Defendant for a copy of her consumer report and Defendant produced the report which was missing information required by law, including "that States may enforce the FCRA, that many states have their own consumer reporting laws, that the consumer may have more rights under State law, and that the consumer may wish to contact a State or local consumer protection agency or State attorney general for more information." (*Id*. ¶¶ 18-29.) Plaintiff alleges that Defendant knowingly and willfully omitted the information "so that consumers would be less likely to contact their State or local consumer protection agencies and State attorneys general." (*Id*. ¶¶ 32-33.)

Defendant removed to this Court on January 14, 2022, invoking the Court's federal question jurisdiction. (Dkt. 1 [Notice of Removal].) Now before the Court is Plaintiff's motion to remand in which Plaintiff argues that she has not alleged facts supporting Article III standing and therefore this Court lacks jurisdiction over her case. (Dkt. 16 [Motion to Remand, hereinafter "Mot."].) For the following reasons, Plaintiff's motion is **GRANTED IN SUBSTANTIAL PART** and the Court **ORDERS** the action remanded to Orange County Superior Court.[1]

## II. LEGAL STANDARD

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). To satisfy Article III's standing requirement, "a plaintiff must show (1) that it has suffered an 'injury in fact' that

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 2, 2022, at 1:30 p.m. is hereby vacated and off calendar.

is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Defendant, as the removing party asserting federal jurisdiction, bears the burden of establishing Plaintiff's Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[A] removed case in which the plaintiff lacks Article III standing *must* be remanded to state court under § 1447(c)." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (emphasis added); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018) ("As a general rule, if the district court is confronted with an Article III standing problem in a removed case—whether the claims at issue are state or federal—the proper course is to remand for adjudication in state court."); *Envtl. Research Ctr. v. Heartland Prod.*, 29 F. Supp. 3d 1281, 1283 (C.D. Cal. 2014) (remanding the action because the plaintiff lacked a cognizable Article III injury). "Remand is the correct remedy" when a district court lacks subject-matter jurisdiction, because "the federal courts have no power to adjudicate the matter," while "[s]tate courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196 (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)).

## III.   DISCUSSION

Plaintiff has not alleged facts that support Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) is informative. In *TransUnion*, the plaintiffs' credit reports maintained by TransUnion contained alerts from the U.S. Department of Treasury Office of Foreign Asset Control ("OFAC") that incorrectly identified the plaintiffs as potential terrorists. *Id*. The Supreme Court assessed the plaintiffs' standing with respect

to two claims. First, the plaintiffs claimed a violation of 15 U.S.C. § 1681e(b) for TransUnion's failure to "follow reasonable procedures to assure maximum possible accuracy" which resulted in the misleading OFAC alerts. *Id*. at 2208. For that claim, the Supreme Court found that some plaintiffs—those whose credit reports containing the misleading OFAC alerts were disseminated to third parties—had standing and other plaintiffs—those whose credit reports were not disseminated to third parties—did not have standing. *Id*. at 2208-13.

The Supreme Court next assessed the plaintiffs' claim under 15 U.S.C. § 1681g that "TransUnion breached its obligation to provide them with their complete credit files upon request." *Id*. at 2213. More specifically, the plaintiffs alleged "TransUnion sent [them] copies of their credit files that omitted the OFAC information, and then in a second mailing sent the OFAC information." *Id*. Finding no Article III standing for this claim, the Supreme Court explained that plaintiffs were complaining of "bare procedural violations, divorced from any concrete harm." *Id*. at 2213 (quotations omitted). The Supreme Court further explained that the plaintiffs had not presented any evidence that TransUnion's statutory violations prevented them from contacting TransUnion to correct any incorrect information in their credit reports before dissemination to any third parties or that they would have tried to correct the misleading information before dissemination to any third parties if the initial credit files that TransUnion provided them had contained the misleading OFAC information. *Id*. at 2213-14.

Here too, Plaintiff is complaining of a non-disclosure of information—Defendant's failure to apprise her "that States may enforce the FCRA, that many states have their own consumer reporting laws, that the consumer may have more rights under State law, and that the consumer may wish to contact a State or local consumer protection agency or State attorney general for more information." Plaintiff does not allege that such non-disclosure resulted in any particular harm to her. Like the plaintiffs in *TransUnion*,

Plaintiff does not allege any concrete action Defendant's statutory violation prevented her from taking.  Indeed, Plaintiff is even further from establishing Article III standing than the plaintiffs in *TransUnion*.  In *TransUnion*, TransUnion issued credit reports to the plaintiffs that failed to provide information specifically pertaining to the plaintiffs: that they were incorrectly marked as potential terrorists, which is highly prejudicial to one's reputation.  It is no stretch to imagine that one would leap into action to correct a report that he is a potential terrorist if only he were supplied the report.  But the Supreme Court was unwilling to draw that inference.  Here, the gap between non-disclosure and inferred action is much wider.  The omitted information in this case includes generalized statements regarding the availability of legal aid and redress at the state level.  That is not the type of information that would obviously spark action from its recipient and Plaintiff does not allege that she had some need to contact state authorities that Defendant's non-disclosure prevented or hindered her from fulfilling.

Defendant cites *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092 (9th Cir. 2022), but that case is readily distinguishable.  In *Tailford*, the plaintiffs brought a claim under 15 U.S.C. § 1681g for Experian's failure to, among other things, disclose inquiries made by third parties and the identify of third parties who had procured the plaintiffs' information, which in turn hindered the plaintiffs from opting out of certain disclosures and thereby harmed plaintiffs' privacy interests, which the FCRA was designed to protect.  *Id*. at 1097, 1098-1101.  In other words, in *Tailford*, there was a direct line between the plaintiffs' procedural right to know which third parties were inquiring about or collecting their information and the plaintiffs' substantive right to keep their information private from such third parties, a substantive right that the FCRA was specifically designed to protect.  And the allegations in the complaint in *Tailford* made it easy to draw that line: the plaintiffs identified the third parties to whom their information was provided without their knowledge, explained that they had no knowledge of or opportunity to disagree with the provision of their [information] to third parties, and

explained concrete actions they took once they learned of the identity of the third parties, including contacting the third parties to inquire why the third parties had requested their information and asking Experian not to provide their information to such third parties. *See Tailford v. Experian Solutions Information, Inc.*, No. 19-cv-02191-CJC, Dkt. 40 (First Amended Complaint) ¶¶ 85-94.

The only possible hook for standing discernible from Plaintiff's complaint is her allegation that Defendant's omission made it so "consumers would be less likely to contact their State or local consumer protection agencies and State attorneys general." (Compl. ¶ 33.) Unlike in *Tailford*, neither Plaintiff's right to privacy nor her right to have her information accurately reported, which the Ninth Circuit identified as the core purposes of the FCRA, *see Tailford*, 26 F.4th at 1099 (9th Cir. 2022), are directly implicated by an alleged hinderance to the ability of consumers to call state authorities. Further, Plaintiff does not particularize the allegation to herself—she does not say that *she* was less likely to contact state authorities, but rather that consumers *in general* were less likely to call state authorities. And even if Plaintiff outright alleged that she herself was less likely to call state authorities because of Defendant's alleged failure to inform her of such authorities, the Court would not find a concrete injury without additional allegations. An allegation of a lesser likelihood of taking an action is not the same as an allegation of a plan to take that action that was hindered by Defendant's non-disclosure. Plaintiff has not alleged that she had some reason to contact state authorities, would have done so if the requisite information was provided, and incurred some harm or face the substantial risk of some harm arising from the missed opportunity to contact state authorities. Put simply, unlike the complaint in *Tailford*, the Court cannot, without speculating, discern from Plaintiff's complaint any action she would have taken or harm she would have avoided if Defendant had provided the non-disclosed information. *See Orpilla v. Schenker, Inc.*, 2020 U.S. Dist. LEXIS 83567 (C.D. Cal. May 12, 2020) (remanding for lack of Article III standing because employer's failure was a "mere

procedural violation" and the plaintiff did not allege that she would have behaved any differently had her employer abided by the FCRA's disclosure and authorization requirements). Given that Plaintiff lacks Article III standing, this case must be remanded to state court. *Polo*, 833 F.3d at 1196; *see Miranda v. Magic Mountain, LLC*, 2018 WL 571914, at *3 (C.D. Cal. Jan. 25, 2018); *Edelstein v. Westlake Wellbeing Props., LLC*, 2017 WL 5495153 (C.D. Cal. Nov. 15, 2017).

Finally, the Court rejects Plaintiff's request for attorneys' fees. Pursuant to 28 U.S.C. § 1447(c), when a motion to remand is brought, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." While the decision to award fees is in the Court's broad discretion, "absent unusual circumstances, courts may award attorneys' fees…only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704 (2005). As is clear from the parties' briefing, standing based on the presence or absence of "downstream consequences" in the FCRA context is a fluid and developing legal issue. Each case presents different facts that may or may not establish standing based on the general propositions announced by the Ninth Circuit and Supreme Court. While the Court firmly agrees with Plaintiff that she has not pled Article III standing, the Court did not find Defendant's arguments objectively unreasonable.

\\
\\
\\
\\
\\
\\

IV. **CONCLUSION**

For the following reasons, Plaintiff's motion to remand is **GRANTED IN SUBSTANTIAL PART**, except for her request for fees.  The Court **ORDERS** this action remanded to Orange County Superior Court.

DATED:     April 25, 2022

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE